# EXHIBIT 4

348-308102-19

FILED
TARRANT COUNTY
5/21/2019 6:07 PM
THOMAS A. WILDER
DISTRICT CLERK

## NO. <u>348-308102-19</u>

| | | |
|---|---|---|
| **BRIAN CARPENTER,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | <u> 348TH </u>  **JUDICIAL DISTRICT** |
| **THE LINCOLN NATIONAL LIFE** | § | |
| **INSURANCE COMPANY and** | § | |
| **LINCOLN NATIONAL** | § | |
| **CORPORATION d/b/a LINCOLN** | § | |
| **FINANCIAL GROUP,** | § | |
| *Defendants* | § | **TARRANT COUNTY, TEXAS** |

## <u>PLAINTIFF BRIAN CARPENTER'S FIRST AMENDED PETITION</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES BRIAN CARPENTER (hereinafter, "Plaintiff"), by and through his attorneys of record, complaining of and about **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY and LINCOLN NATIONAL CORPORATION d/b/a LINCOLN FINANCIAL GROUP** (hereinafter referred to as "Defendants" or "Lincoln National"), and for cause of action would respectfully show unto the Court the following:

### I.  DISCOVERY

1.      Plaintiff intends to conduct discovery under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

### II.  STATEMENT OF MONETARY RELIEF

2.      Pursuant to requirements of Texas Rule of Civil Procedure 47(c), Plaintiff seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment and post-judgment interest, attorney's fees, and all other further relief to which Plaintiff may show himself justly entitled.

### III. PARTIES AND SERVICE

3.      Plaintiff, Dr. Brian Carpenter, is an individual who resides in Tarrant County, Texas.  The last three digits of Plaintiff's Texas Driver License are 980, and the last three digits of his Social Security number are 703.

4.      Defendant, The Lincoln National Life Insurance Company is a duly incorporated foreign insurance company, authorized to do business in, and doing business in, the State of Texas, and may be served with process through its registered agent Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

5.      Defendant, Lincoln National Corporation d/b/a Lincoln Financial Group is a foreign holding company, doing business in the State of Texas. Pursuant to Texas Civil Practice and Remedies Code Rule 28, Plaintiff asserts that Lincoln Financial Group is an assumed or common name for Lincoln National Corporation. Lincoln National Corporation d/b/a Lincoln Financial Group is transacting business in Texas without registering with the Texas Secretary of State. Therefore, pursuant to § 5.251 of the Texas Business Organizations Code, service of process may be had on Defendant, Lincoln National Corporation d/b/a Lincoln Financial Group, by serving the Texas Secretary of State at P.O. Box 12079, Austin, Texas 78711-2079. Defendant's registered agent for service of process is Dennis R. Glass, 150 North Radnor Chester Road, Radnor, PA  19087.

### IV. JURISDICTION & VENUE

6.      The subject matter in controversy is within the jurisdictional limits of this court.

7.      Defendant, The Lincoln National Life Insurance Company, is a duly incorporated insurance company doing business in the State of Texas. Defendant engaged in the conduct which is the subject of this litigation in Fort Worth, Tarrant County, Texas, and thus, is personally subject to the jurisdiction of this Court. In addition, this Court has personal jurisdiction over Defendant because it purposefully availed itself of the privilege of conducting business activities in the state of Texas, established minimum contacts sufficient to confer jurisdiction over Defendant, and the

assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Moreover, Defendant contracted, by mail or otherwise with a Texas resident in the State of Texas and committed the torts herein within the State of Texas. TEX. CIV. PRAC. & REM. CODE § 17.042.

8.      Defendant, Lincoln National Corporation d/b/a Lincoln Financial Group, is a duly incorporated foreign holding company doing business in the State of Texas. Defendant engaged in the conduct which is the subject of this litigation in Fort Worth, Tarrant County, Texas, and thus, is personally subject to the jurisdiction of this Court. In addition, this Court has personal jurisdiction over Defendant because it purposefully availed itself of the privilege of conducting business activities in the state of Texas, established minimum contacts sufficient to confer jurisdiction over Defendant, and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

9.      Venue in Tarrant County is proper in this cause pursuant to TEX. CIV. PRAC. & REM. CODE §15.002 (a)(1), because all or a substantial part of the events or omissions which form the basis of this suit occurred there. Additionally, essential witnesses of the events, misrepresentations, omissions, and transactions giving rise to the claims made herein are located and reside in Tarrant County.

## V. FACTS

10.     On or about August 26, 2016, Plaintiff entered into an employment agreement with the Tarrant County Hospital District to work as a Podiatric Surgeon.

11.     On or about September 1, 2016, in consideration of the payment of premiums by the Tarrant County Hospital District, Defendants issued to Plaintiff, Dr. Brian Carpenter, its Group

Long-Term Disability Policy, Policy No. 00001014878000000 ("the Policy").

12.    Under the terms of the Policy, Lincoln National agreed to pay monthly disability benefits, up to a maximum monthly benefit of $15,000.00, in the event that Plaintiff should become totally or partially unable to perform the duties of his occupation as a result of disability.  Lincoln National also agreed to pay monthly benefits due to the inability to safely and completely perform certain activities of daily living.

13.    "Total Disability" is defined as, "1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation. 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education, or experience will reasonably allow."

14.    "Own Occupation Period" means, "a period beginning at the end of the Elimination Period and ending at the end of the Maximum Benefit Period for Insured Employees." The Elimination Period is defined as, "90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period." Maximum Benefit Period is, "(For Sickness, Injury, or Pre-Existing Conditions): The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later). Plaintiff's Maximum Benefit Period is September 4, 2043—the day he turns sixty-seven (67) and reaches his Social Security Normal Retirement Age.

15.    "Partial Disability" is defined as, "the Insured Employee is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability: 1. The Insured Employee's hours or production is reduced; 2. One or more Main Duties of the job are reassigned;

or 3. The Insured Employee is working in a lower-paid occupation."

16.　　　"Progressive Income Benefit" is payable under the Policy when, "After completion of the Elimination Period shown in the Schedule of Insurance, the Company will pay an additional monthly benefit to an Insured Employee; if he or she: 1. Is receiving Total or Partial Disability Monthly Benefits under this Policy; and 2. submits proof of suffering the Loss of Activities of Daily Living or a Cognitive Impairment."

17.　　　"Loss of Activities of Daily Living" is defined as, "…due to an Injury or Sickness, the Insured Employee has lost the ability to safely and completely perform two or more of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity." The six Activities of Daily Living are: bathing, dressing, toileting, transferring, continence, and eating.

18.　　　The Policy also contains a pre-existing condition exclusion which states, "This Policy will not cover any Total or Partial Disability: 1. which is caused or contributed to by, or results from a Pre-Existing Condition; and 2. which begins in the first 12 months after the Insured Employee's Effective Date. "Pre-Existing Condition" is defined as, "a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to the Insured Employee's Effective Date."

19.　　　In late September of 2016, Plaintiff began experiencing numbness, tingling, and loss of motor skills in his left arm.

20.　　　In the beginning of October, Plaintiff's symptoms continued to progress. Plaintiff began experiencing burning pain in his left arm and his motor skills continued to deteriorate to the point that he was unable to fully perform daily activities such as dressing, bathing, eating, and holding objects in his left hand. At this time, it was believed that Plaintiff was suffering from brachial plexopathy.

21.    On or about October 6, 2016, Plaintiff ceased working at the Tarrant County Hospital District due to his inability to perform his duties as a podiatric surgeon.

22.    On or about October 7, 2016, Plaintiff gave notice of his disability claim, during the Own Occupation Period, to Lincoln National and provided a medical authorization enabling Lincoln National to obtain any medical records necessary to process Plaintiff's claim.

23.    By February 4, 2017, Defendants had determined that Plaintiff's condition met the Policy definition of disability for Long Term Disability.

24.    On or about February 6, 2017, five months after making his disability claim, Plaintiff received his first correspondence from Lincoln National and acknowledgment of his claim. The letter requested medical records from all treating professionals dating back to June 1, 2016. Lincoln National's correspondence stated that it was pending review of the additional information sought and requested a thirty-day extension in issuing a decision. Attached to the letter was a form entitled "Treating Medical Professionals" which Plaintiff completed and returned to Lincoln National, listing providers that had treated him dating back to June 1, 2016.

25.    On or about February 16, 2017, Lincoln National issued a letter stating it required proof of "continued disability." However, a form entitled "Group Continuance of Disability," dated December 19, 2016, had already been provided to Lincoln National by Plaintiff's treating neurologist, Dr. Madhuri Koganti. Lincoln National stated that it had requested records from UNT Health System and CVS Pharmacy dating back to January 1, 2016 on Plaintiff's behalf. Lincoln National requested an additional thirty-day extension at that time.

26.    On March 8, 2017, Lincoln National requested an additional thirty-day extension, "pending additional medical information regarding the pre-ex timeframe." By this time, Plaintiff had provided all items, statements, and forms Lincoln National requested and/or required to process

Plaintiff's claim. Lincoln National did not request any additional information to process Plaintiff's claim or inform Plaintiff as to why a decision could not be rendered.

27.     On or about May 4, 2017, Lincoln National sent Plaintiff's medical records to Network Medical Review Company who assigned Dr. Steven Donald Graham ("Dr. Graham") to review Plaintiff's records. Dr. Graham was asked specifically, "Is the condition that caused him to stop working contributed to by an injury or sickness for which he received treatment in this period 06/01/16-08/31/16?" Dr. Graham stated, "No. No neurological cause and condition has been proven to cause the claimant to stop working from an injury or sickness for which he received treatment 06/01/16-08/31/16."

28.     Dr. Graham's report also included review of Plaintiff's medical records from his treating neurologist, physiatrist, orthopedic surgeon, and occupational therapist. These medical records noted Plaintiff's difficulty with daily activities such as buttoning his shirt, tying his shoes, or holding objects in his left hand. Plaintiff's medical records noted difficulty touching his left fingers to his nose, an inability to perform surgery, as well as decreased strength and reflexes in Plaintiff's left arm. After reviewing these records, Dr. Graham opined, "No specific neurological restrictions or limitations are indicated. Neurologically, the claimant is capable to return to full work duty with no restrictions or limitations."

29.     On May 22, 2017, two-hundred and twenty-seven (227) days after submission of Plaintiff's claim for disability benefits, and seventy-five days after receiving all items, statements, and forms required to render a decision, Lincoln National denied Plaintiff's claim. The denial letter stated, "It has been determined that the condition which caused you to stop working is not a pre-existing condition as defined by the policy; however, no further benefits are payable, and your claim has been denied." The letter explained that benefits were being denied because, "There are no specific

neurological restrictions and/or limitations that would preclude you from performing the main duties of your occupation." This opinion was issued despite Lincoln National's previous determination, on February 4, 2017, that Plaintiff met the definition of disability for long term disability, and despite numerous records from Plaintiff's treating providers demonstrating Plaintiff had specific neurological impairments and restrictions in his left arm that prevented him from continuing his occupation as a podiatric surgeon.

30.     Plaintiff continued seeking treatment for his left brachial plexopathy; however, by March 8, 2017, multiple providers were of the opinion that Plaintiff would never see improvement in his condition and would never be able to work as a podiatric surgeon, as he would place patient care in jeopardy. On or about October 2, 2017, Plaintiff appealed Lincoln National's denial of his disability claim.

31.     On or about December 22, 2017, Lincoln National retained MLS Group of Companies, LLC and Dr. David Hoenig ("Dr. Hoenig") to review Plaintiff's medical records. On January 5, 2018, Dr. Hoenig issued an opinion stating, "As the claimant is a Podiatrist, the claimant would not be able to do any Podiatry surgery secondary to left upper extremity weakness. His findings would put patient care in jeopardy. The restrictions and limitations by his attending providers are reasonable and consistent with the medical findings. His providers support that the claimant is unable to work as a Podiatry surgeon. I agree with this." Despite the fact that Defendants had already sought an opinion from a neurologist who opined that Plaintiff had not been treated for a condition in this "pre-ex" time period that would exclude coverage, Defendants requested another opinion from Dr. Hoenig.  Dr. Hoenig opined he could not affirmatively state that Plaintiff had been treated for a condition which would cause the pre-existing condition exclusion to apply.

32.     On or about December 1, 2018, Plaintiff began consulting for the Texas Podiatric Medical

Association. He is a speaker on the association's behalf and acts as its Chief Operating Officer. Plaintiff's compensation is five thousand dollars per month. Plaintiff has been providing these services from December 1, 2018 until the present.

33.     Not to be deterred on this issue, on or about February 9, 2018, Lincoln National sent Plaintiff a letter stating his medical information had been reviewed by a healthcare consultant, Lynn Sucha, R.N. (hereinafter "Nurse Sucha"). Nurse Sucha, an employee of Lincoln National, was asked whether Plaintiff was treated for a condition that was caused by, contributed to, or resulted from left brachial plexopathy from June 1, 2016 to September 1, 2016.  Nurse Sucha stated that Plaintiff was treated for headaches and torticollis from June 1, 2016 to September 1, 2016. Nurse Sucha's opinion did not answer the question posed by Lincoln National. Instead, Nurse Sucha opined that Plaintiff's brachial plexopathy, headaches, and torticollis resulted from radiation treatment for cancer Plaintiff had suffered over a decade prior and Plaintiff's condition was therefore pre-existing.

34.     On or about April 16, 2018, Lincoln National denied Plaintiff's appeal of its previous disability decision. The denial letter stated that Lincoln National had identified transferable occupations Plaintiff could perform; although, Plaintiff was still within the Own Occupation Period, so inquiries into other transferable occupations was irrelevant. There was no inquiry or discussion as to whether Plaintiff could perform the Main Duties of his occupation or whether he qualified for partial disability benefits under the Policy. Finally, the letter stated benefits were also being denied because Defendants were now of the opinion that Plaintiff's disability was a pre-existing condition, basing its decision on the opinion of its employee, Nurse Sucha, rather than the opposite conclusion reached by Drs. Graham and  Hoenig, both of whom are alleged to be independent, board-certified neurologists.

## VI. CAUSES OF ACTION
### A.  VIOLATION OF CHAPTER 541 TEXAS INSURANCE CODE

35.     Plaintiff fully incorporates and re-alleges paragraphs 1 through 34.

36.     As noted above, Lincoln National is engaged in the business of insurance as that term is used in TEX. INS. CODE § 541.002(2). Specifically, Lincoln National brokered and issued the Policy in question. Thus, Lincoln National is considered a "person" for purposes of liability under Chapter 541 of the Texas Insurance Code ("Chapter 541").

37.     Plaintiff would show that Lincoln National engaged in certain deceptive, unfair, and prohibited insurance practices actionable under Chapter 541. Specifically, Defendants:

   a.   Made statements misrepresenting the terms of the Policy. TEX. INS. CODE § 541.051(1)(A). Specifically, Lincoln National misrepresented the Policy terms regarding the applicability of its pre-existing condition exclusion. Further, Lincoln National misrepresented the Policy terms in referencing other occupations Plaintiff might be able to perform as applicable to the analysis of whether he was totally or partially disabled. Additionally, Lincoln National omitted any reference to its obligation to pay partial disability benefits or progressive income benefits that Plaintiff was entitled to under the Policy.

   b.   Failed within a reasonable time to affirm or deny coverage of a claim to the policyholder. TEX. INS. CODE § 541.060(a)(4)(A). Specifically, Lincoln National failed to render a decision for 227 days after submission of Plaintiff's claim, despite having adequate information to render a decision prior thereto.

   c.   Misrepresenting to a claimant a material fact or policy provision relating to coverage at issue. TEX. INS. CODE § 541.060(a)(1). Specifically, Lincoln National denied all coverage to Plaintiff without any inquiry or explanation as to whether he qualified for partial disability benefits under the Policy. Moreover, Lincoln National claimed that Plaintiff was not totally disabled by referencing inapplicable opinions such as his ability to carry weight, crawl, and climb ladders, with no discussion as to how Plaintiff's condition affected his ability to perform the main duties of his occupation—the standard set forth in the Policy. Additionally, the denial referenced other occupations Plaintiff might be capable of performing, which was inapplicable under the terms of the Policy. Further, Lincoln National misrepresented the language of its Pre-Existing Exclusion clause to wrongly deny coverage.

   d.   Refused to pay a claim without conducting a reasonable investigation with respect to the claim. TEX. INS. CODE § 541.060(a)(7). Specifically, Lincoln National denied coverage to Plaintiff after consulting with an unqualified employee of Lincoln

National, Nurse Sucha, in claiming Plaintiff's disability to be pre-existing, despite previously obtaining independent opinions of two board-certified neurologists who opined that Plaintiff's condition was not a pre-existing condition under the terms of this policy. Lincoln National also denied Plaintiff's claim without any investigation or mention of whether Plaintiff could perform the Main Duties of his occupation or whether he qualified for partial disability benefits under the Policy.

e. Failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which its liability had become reasonably clear. TEX. INS. CODE § 541.060(a)(2)(A). Specifically, Lincoln National altered its reason(s) for denying Plaintiff's claim each time evidence was presented that refuted previous grounds for denial. Further, Lincoln National never considered whether Plaintiff qualified for partial disability or progressive income benefits despite its obligation to pay such benefits if the entitlement to such benefits was met under the terms of the policy.

## B.  VIOLATION OF CHAPTER 542 TEXAS INSURANCE CODE

38.     Plaintiff fully incorporates and re-alleges paragraphs 1 through 37.

39.     Plaintiff would further show that Lincoln National engaged in certain deceptive, unfair and prohibited practices in processing Plaintiff's claim in violation of Chapter 542 of the Texas Insurance Code. Specifically, Defendants:

a. Failed to timely acknowledge receipt of Plaintiff's claim, commence an investigation, and request information reasonably believed to be required from Plaintiff to render a decision in violation of TEX. INS. CODE § 542.055. Specifically, Lincoln National failed to acknowledge Plaintiff's claim, or specify additional information sought, for 61 days after receiving Plaintiff's claim for benefits. Additionally, Lincoln National failed to investigate whether Plaintiff was entitled to partial disability benefits or progressive income benefits or request information regarding the same.

b. Failed to notify Plaintiff in writing of the acceptance or rejection of his claim for disability benefits not later than the 15th business day after receipt of all items, statements and forms required, or accept or reject Plaintiff's claim within forty-five days of requesting additional time, in violation of TEX. INS. CODE § 542.056(a). Specifically, Lincoln National failed to notify Plaintiff in writing of the acceptance or rejection of his claim for seventy-five days after requesting its third thirty-day extension to render a decision. By March 8, 2017, all information requested from Plaintiff had been provided, yet Plaintiff did not receive acceptance or rejection of his claim until May 22, 2017.

c. Delayed payment of Plaintiff's claim in violation of TEX. INS. CODE § 542.058(a). Specifically, Lincoln National has continued to wrongfully deny issuance of payment of the benefits that Plaintiff is legally entitled to under his policy. As an example, a

Senior Claims Examiner for Lincoln National, Jamie Kudym, had previously determined that Plaintiff met the Policy's definition of disability as of February 4, 2017. Under the terms of the policy the elimination period ended January 4, 2017 so benefits were due from January 4, 2017 forward.

### C. Deceptive Trade Practices

40.     Plaintiff fully incorporates and re-alleges paragraphs 1 through 39.

41.     Plaintiff would show that Defendants engaged in certain false, misleading, and deceptive acts or practices actionable under the Texas Deceptive Trade Practices Act and Texas Insurance Code, and Plaintiff relied on those acts or practices to his detriment. TEX. INS. CODE § 541.151(2); TEX. BUS. & COM. CODE § 17.46(b). Specifically, Defendants:

> a. Represented that an agreement conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law. TEX. BUS. & COM. CODE § 17.46(b)(12). Specifically, Lincoln National misrepresented its obligations to pay Plaintiff the total or partial disability benefits he was entitled to, wrongfully representing that Plaintiff was ineligible to receive benefits because he might be able to perform other occupations and wrongfully alleging his disability to be pre-existing. In addition, Lincoln National misrepresented its deadline to render a decision, when such deadlines had clearly been violated. Further, when a reason for denial of benefits was proven to be unjustified and a previous ground for denial had been admitted not to exist, Lincoln National reversed its position in order to deny coverage.

### D. Breach of Contract

42.     Plaintiff fully incorporates and re-alleges paragraphs 1 through 41.

43.     The Policy issued to Plaintiff was a valid and enforceable contract.

44.     Plaintiff has performed all conditions precedent.

45.     Defendants has breached its obligation to pay total or partial disability benefits, as well as progressive income benefits, as set forth in the Policy, and as a result, Plaintiff is entitled to recover damages resulting from Defendants' failure to perform its obligations as set forth in the Policy.

### VII. DAMAGES

46.     Plaintiff fully incorporates and re-alleges paragraphs 1 through 45.

47.     Plaintiff would further show that Lincoln National committed these acts knowingly. TEX. INS. CODE § 541.002(1); TEX. BUS. & COM. CODE § 17.50(b)(1). Lincoln National was well-aware of the applicable Policy provisions and time allotted by law in processing Plaintiff's claim yet violated the same knowingly. Further, Lincoln National retained qualified medical doctors who opined that Plaintiff could not do his job as a podiatric surgeon and that he had not been treated for a pre-existing condition that would exclude coverage under the terms of the Policy but knowingly denied coverage based upon inapplicable provisions of the Policy and the medical opinion of a nurse who is not qualified to make medical diagnoses.

48.     Plaintiff would show that the acts and/or practices complained of were the producing cause of Plaintiff's damages more fully described herein.

49.     Defendants' actions and representations caused Plaintiff to rely upon those actions and representations to his detriment. In particular, Plaintiff believed Defendants would handle his claims in a just and rightful manner in accordance with his Policy and the laws of the State of Texas, and Defendants' actions and misrepresentations in failing to do so have caused Plaintiff great emotional and financial hardship.

50.     Plaintiff has timely notified Defendants of such complaints pursuant to §17.505(a) of the TEX. BUS. & COM. CODE and would show compliance with all condition's precedent to the filing of this suit and recovery of additional damages and attorneys' fees.

### A.   ECONOMIC AND ACTUAL DAMAGES

51.     Plaintiff fully incorporates and re-alleges paragraphs 1 through 50.

52.     Plaintiff sustained the following economic and actual damages to date as a result of the actions and practices of Defendants described above:

a.   Economic Damages:

i. Repudiation of obligation to pay total disability benefits and progressive income benefits in the amount of $15,000/month for a total of 178 months: **$3,015,000.00**; and

ii. 18% per year damages on the amount of Plaintiff's claim: **$1,058,000.00.** TEX. INS. CODE § 542.060.

iii. In the alternative, repudiation of obligation to pay partial disability benefits and progressive income benefits in the amount of $15,000/month for a total of 178 months: **$3,015,000.00**; and

iv. 18% per year damages on the amount of Plaintiff's claim: **$1,058,000.00.** TEX. INS. CODE § 542.060.

### B. PUNITIVE, EXEMPLARY, & TREBLE DAMAGES

53. Plaintiff fully incorporates and re-alleges paragraphs 1 through 52.

54. Plaintiff would show that the false, misleading and deceptive acts and practices complained of herein were committed knowingly in that Defendants had actual awareness of the falsity, unfairness, or deceptiveness of its acts and practices. Further, Plaintiff relied on these acts or practices to his detriment. Specifically, Plaintiff depleted his life's savings and sold many of his possessions attempting maintain financial stability while awaiting approval of his disability claim. Plaintiff became increasingly isolated without the social interactions that revolved around his occupation as a podiatric surgeon. In short, Plaintiff's life has been turned upside down by the false and deceptive conduct of Defendants and continued denial of the benefits Plaintiff is legally entitled to.

55. Therefore, Plaintiff is also entitled to recover damages for the mental anguish he endured, plus trebling of Plaintiff's economic damages, as provided by TEX. INS. CODE § 541.151(b); TEX. BUS. & COM. CODE § 17.50(b)(1).

### C. ATTORNEYS' FEES

56. Plaintiff fully incorporates and re-alleges paragraphs 1 through 55.

57. Due to Defendants' violation of Texas Business & Commerce Code as well as the Texas

Insurance Code, Plaintiff is entitled to recover court costs and reasonable and necessary attorney's fees under TEX. INS. CODE § 541.152; TEX. INS. CODE § 542.060; TEX. BUS. & COM. CODE § 17.46(b).

## VIII. RIGHT TO AMEND

58.     Furthermore, Plaintiff would state that because of the nature of his claim, Plaintiff reserves the right to, based upon additional information during the course of discovery, amend these pleadings to include claims, allegations, causes of action, names, and grounds for recovery in accordance with the Texas Rules of Civil Procedure.

## IX. PLAINTIFF'S DISCOVERY REQUESTS TO DEFENANT

### A.     REQUESTS FOR DISCLOSURE

59.     Defendants are hereby requested to disclose, within fifty (50) days of service of this petition and incorporated request, the information or material described in Rule 194.2 of the Texas Rules of Civil Procedure, to the undersigned counsel of record for Plaintiff.

### B.     INTERROGATORIES

60.     Defendants are hereby requested to answer, within fifty (50) days of service this petition and incorporated request, the interrogatories attached hereto as "Exhibit A," separately, fully, in writing, and under oath, pursuant to Rule 197 of the Texas Rules of Civil Procedure, to the undersigned counsel of record for Plaintiff.

### C.     REQUEST FOR PRODUCTION

61.     Defendants are hereby requested to produce, within fifty (50) days of service of this petition and incorporated request, the documents and tangible items in the list attached hereto as "Exhibit B," pursuant to Rule 196 of the Texas Rules of Civil Procedure, to the undersigned counsel of record for Plaintiff.

## X. CONCLUSION & PRAYER

62.     For these reasons, Plaintiff respectfully prays that Defendants be cited to appear and answer herein as the law directs, and that upon final hearing, Plaintiff have and recover judgment from the Defendants pursuant to the above and foregoing allegations in such amounts as hereinabove set out and as the evidence may show proper; together with interest thereon at the legal rate, costs of court, and reasonable attorneys' fees.

63.     Additionally, Plaintiff respectfully prays for all other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled, including punitive, exemplary, and treble damages.

Respectfully submitted,

**BLAIES & HIGHTOWER, L.L.P.**
420 Throckmorton Street, Suite 1200
Fort Worth, Texas 76102
(817) 334-0800
(817) 334-0574 (fax)

By: _____
WESLEY M. HIGHTOWER
State Bar No. 09618200
weshightower@bhilaw.com

M. CHASE PRICE
State Bar No. 24104438
cprice@bhilaw.com

**TREY HARLIN P.C.**
5752 Boat Club Road, Suite 400
Fort Worth, Texas 76179
(817) 335-0444
(817) 335-5361 (fax)

TREY HARLIN
State Bar No. 00795054
trey@harlinlaw.com

ATTORNEYS FOR PLAINTIFF
BRIAN CARPENTER

# Exhibit A

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Brian Carpenter, serves the following Interrogatories to be answered by The Lincoln National Life Insurance Company ("Defendant"), under oath, within thirty (50) days after service upon Defendant of Plaintiff's Original Petition pursuant to Rule 194.3 of the Texas Rules of Civil Procedure. Defendant's answers must be in accordance with Rule 197 of the Texas Rules of Civil Procedure. Defendant must supplement its answers as required under Rule 193 of the Texas Rules of Civil Procedure.

### Definitions

As used in these interrogatories, the terms listed below should be understood to have the meanings described below:

As used in these Interrogatories, and in connection with any supplementation of prior answers to these Interrogatories, the terms "Plaintiff" shall mean Brian Carpenter.

As used in these Interrogatories, and in connection with any supplementation of prior answers to these Interrogatories, the terms "Defendant," "you," "your" or "company" shall mean Lincoln National Corporation d/b/a The Lincoln National Life Insurance Company and Lincoln Financial Group.

The term "policy" means Group Long Term Disability Policy, number 00001014878000000, issued by Defendant under which Plaintiff was insured.

The term "lawsuit" means any and all claims which have been filed or which may be filed in the above styled cause by the Plaintiff.

The term "identify," when used in connection with a "person" or "persons," as defined below, means to state the proper legal name, last known residence and business addresses and last known residence and business telephone numbers of such "person" or "persons."

The term "identify," when used in connection with a "corporate entity," means to state its legal name, its place of incorporation, its principal place of business and its status as a division or subsidiary of any other corporation known to the Plaintiff, along with the last known address and telephone number of the principal place of business.

The term "identify," when used in connection with "documents," shall mean identification in a form adequate for a specific demand for production, e.g., its date, its author, its addressee and a description of the type of document (note, letter, memorandum, minute, contract, agreement, report, telegram, chart, plat, map, photograph, transcription, sound reproduction, etc.) or, if the above information is not available, some other means of identifying it, and its present location and the name of each of its present custodians.  Unless otherwise indicated, documents to be identified shall include both documents in your possession, custody and control, and any other documents within such category of which you have actual knowledge.  If any such document was, but is no longer, in Plaintiff's possession, custody or control, or in existence, state whether it is (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others, or (d) otherwise disposed of, and in each instance, explain the circumstances surrounding and authorization for such disposition thereof and state the date or approximate date thereof.

The terms "communication(s)," "communicate," "comment," or "correspondence" shall mean and include all discussions, conversations, interviews, negotiations, cablegrams, mailgrams, telegrams, telexes, cables, electronic mail, text messages, multimedia messages, or other forms of written or verbal interchange, however transmitted, including reports, notes, memoranda, lists, agenda, and other documents and records of communications, and when used shall require a statement of the name of the individual who made the communication, the person(s) to whom he made it, the date it was made, the form in which it was made, and whether or not it was recorded. This also includes any deleted communications or correspondence, including, but not limited to, deleted emails or text messages.

The term "person" or "persons" includes any legal entity inquired about, whether a natural person, partnership, association, joint venture, corporation or other legal entity.

The terms "medical professional(s)" or "healthcare professional(s)" means an individual accredited by a professional body upon completing a course of study, and usually licensed by a government agency to practice a health-related profession, such as dentistry, medicine, nursing, occupational health or physical therapy.

The terms "claim(s)" means Plaintiff's claim for disability benefits under The Lincoln National Life Insurance Company's Group Long Term Disability Policy, number 00001014878000000.

## **INTERROGATORIES**

<u>INTERROGATORY NO. 1</u>:  Please identify the date you first received notice of a claim for disability benefits from Plaintiff, including:
   a.  the person or persons who received the claim; and
   b.  the medium (e.g facsimile, email, physical delivery, etc.) in which the claim was received.

ANSWER:

<u>INTERROGATORY NO. 2</u>:  Please identify the date Defendant first provided written notice to Plaintiff acknowledging receipt of Plaintiff's claim for disability benefits.

ANSWER:

<u>INTERROGATORY NO. 3</u>:  Identify the date of each request for items, forms, or statements from Plaintiff, including:
   a.  the information requested;
   b.  the medium through which each request was made; and
   c.  the date the requested information was received.

ANSWER:

<u>INTERROGATORY NO. 4</u>:  Identify each and every individual, including employees of Defendant, who was consulted in processing Plaintiff's claim for disability benefits. Please note, this Interrogatory is not limited to those persons who issued a formal opinion.

ANSWER:

<u>INTERROGATORY NO. 5</u>:  Identify each person who you may call to testify on your behalf as an expert witness, including the subject matter of each expert's testimony, the factual basis of each opinion rendered, and the opinion of each expert.

ANSWER:

<u>INTERROGATORY NO. 6</u>:  Please state the factual basis that supports your contention that Plaintiff did not meet the definition of Totally Disabled under the terms of the policy.

ANSWER:

<u>INTERROGATORY NO. 7</u>:  Please state the factual basis that Defendant relies upon in denying Plaintiff's claim for Partial Disability Benefits.

ANSWER:

INTERROGATORY NO. 8: Please describe all investigative steps that have been taken to determine Plaintiff was not entitled to Partial Disability Benefits under the policy.

ANSWER:

INTERROGATORY NO. 9: Please describe all physical impairments and restrictions Plaintiff had according to your investigation from October 6, 2016 to April 16, 2018.

ANSWER:

INTERROGATORY NO. 10: Please describe why Plaintiff's ability to perform other occupations was applicable in determining whether Plaintiff was totally disabled per the terms of the policy.

ANSWER:

INTERROGATORY NO. 11: State the Main Duties of Plaintiff's occupation and your determination as to Plaintiff's ability to perform each main duty.

ANSWER:

INTERROGATORY NO. 12: Please state the date that you reasonably anticipated litigation was likely to ensue regarding Plaintiff's claim for disability benefits.

ANSWER:

INTERROGATORY NO. 13: Identify each person answering these Interrogatories, supplying information for, or assisting in any way, on behalf of Defendant, including:
   a) each person's full name;
   b) his/her job position;
   c) the duties of his/her position; and,
   d) the length of time he/she has been employed in his/her current position.

ANSWER:

INTERROGATORY NO. 14: Identify each employee of Defendant who had any conversation(s) with the Plaintiff concerning his disability claim and the general nature of what was said or communicated.

ANSWER:

INTERROGATORY NO. 15: Please identify any and all sicknesses or injuries, as defined by the policy, that Plaintiff received treatment for between June 1, 2016 and September 1, 2016.

ANSWER:

<u>INTERROGATORY NO. 16</u>: Please state the factual basis that supports your contention that Plaintiff's left brachial plexopathy was caused, contributed to by, or resulted from the sicknesses or injuries identified in your response to Plaintiff's Interrogatory No. 15 above.

ANSWER:

<u>INTERROGATORY NO. 17</u>: Please describe the "Own Occupation Period" that applies to Plaintiff as that term is defined in the policy.

ASNWER:

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO LINCOLN NATIONAL CORPORATION d/b/a LINCOLN FINANCIAL GROUP

Pursuant to the Texas Rules of Civil Procedure, Plaintiff Brian Carpenter, serves the following Interrogatories to be answered by Lincoln National Corporation d/b/a Lincoln Financial Group ("Defendant"), under oath, within thirty (50) days after service upon Defendant of Plaintiff's Original Petition pursuant to Rule 194.3 of the Texas Rules of Civil Procedure. Defendant's answers must be in accordance with Rule 197 of the Texas Rules of Civil Procedure. Defendant must supplement its answers as required under Rule 193 of the Texas Rules of Civil Procedure.

### **Definitions**

As used in these interrogatories, the terms listed below should be understood to have the meanings described below:

As used in these Interrogatories, and in connection with any supplementation of prior answers to these Interrogatories, the terms "Plaintiff" shall mean Brian Carpenter.

As used in these Interrogatories, and in connection with any supplementation of prior answers to these Interrogatories, the terms "Defendant," "you," "your" or "company" shall mean Lincoln National Corporation d/b/a Lincoln Financial Group.

The term "policy" means Group Long Term Disability Policy, number 00001014878000000, issued by Defendant under which Plaintiff was insured.

The term "lawsuit" means any and all claims which have been filed or which may be filed in the above styled cause by the Plaintiff.

The term "identify," when used in connection with a "person" or "persons," as defined below, means to state the proper legal name, last known residence and business addresses and last known residence and business telephone numbers of such "person" or "persons."

The term "identify," when used in connection with a "corporate entity," means to state its legal name, its place of incorporation, its principal place of business and its status as a division or subsidiary of any other corporation known to the Plaintiff, along with the last known address and telephone number of the principal place of business.

The term "identify," when used in connection with "documents," shall mean identification in a form adequate for a specific demand for production, e.g., its date, its author, its addressee and a description of the type of document (note, letter, memorandum, minute, contract, agreement, report, telegram, chart, plat, map, photograph, transcription, sound reproduction, etc.) or, if the above information is not available, some other means of identifying it, and its present location and the name of each of its present custodians. Unless otherwise indicated, documents to be identified shall include both documents in your possession, custody and control, and any other documents within such category of which you have actual knowledge. If any such document was, but is no longer, in Plaintiff's possession, custody or control, or in existence, state whether it is (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others, or (d) otherwise disposed of, and in each instance, explain the circumstances surrounding and authorization for such disposition thereof and state the date or approximate date thereof.

The terms "communication(s)," "communicate," "comment," or "correspondence" shall mean and include all discussions, conversations, interviews, negotiations, cablegrams, mailgrams, telegrams, telexes, cables, electronic mail, text messages, multimedia messages, or other forms of written or verbal interchange, however transmitted, including reports, notes, memoranda, lists, agenda, and other documents and records of communications, and when used shall require a statement of the name of the individual who made the communication, the person(s) to whom he made it, the date it was made, the form in which it was made, and whether or not it was recorded. This also includes any deleted communications or correspondence, including, but not limited to, deleted emails or text messages.

The term "person" or "persons" includes any legal entity inquired about, whether a natural person, partnership, association, joint venture, corporation or other legal entity.

The terms "medical professional(s)" or "healthcare professional(s)" means an individual accredited by a professional body upon completing a course of study, and usually licensed by a government agency to practice a health-related profession, such as dentistry, medicine, nursing, occupational health or physical therapy.

The terms "claim(s)" means Plaintiff's claim for disability benefits under The Lincoln National Life Insurance Company's Group Long Term Disability Policy, number 00001014878000000.

## **INTERROGATORIES**

INTERROGATORY NO. 1:  Please identify the date you first received notice of a claim for disability benefits from Plaintiff, including:
   a. the person or persons who received the claim; and
   b. the medium (e.g facsimile, email, physical delivery, etc.) in which the claim was received.

ANSWER:

INTERROGATORY NO. 2:  Please identify the date Defendant first provided written notice to Plaintiff acknowledging receipt of Plaintiff's claim for disability benefits.

ANSWER:

INTERROGATORY NO. 3:  Identify the date of each request for items, forms, or statements from Plaintiff, including:
    a.  the information requested;
    b.  the medium through which each request was made; and
    c.  the date the requested information was received.

ANSWER:

INTERROGATORY NO. 4:  Identify each and every individual, including employees of Defendant, who was consulted in processing Plaintiff's claim for disability benefits. Please note, this Interrogatory is not limited to those persons who issued a formal opinion.

ANSWER:

INTERROGATORY NO.  5:  Identify each person who you may call to testify on your behalf as an expert witness, including the subject matter of each expert's testimony, the factual basis of each opinion rendered, and the opinion of each expert.

ANSWER:

INTERROGATORY NO. 6:  Please state the factual basis that supports your contention that Plaintiff did not meet the definition of Totally Disabled under the terms of the policy.

ANSWER:

INTERROGATORY NO.  7:  Please state the factual basis that Defendant relies upon in denying Plaintiff's claim for Partial Disability Benefits.

ANSWER:


INTERROGATORY NO. 8:  Please describe all investigative steps that have been taken to determine Plaintiff was not entitled to Partial Disability Benefits under the policy.

ANSWER:

INTERROGATORY NO. 9: Please describe all physical impairments and restrictions Plaintiff had according to your investigation from October 6, 2016 to April 16, 2018.

ANSWER:

INTERROGATORY NO. 10:  Please describe why Plaintiff's ability to perform other occupations was applicable in determining whether Plaintiff was totally disabled per the terms of the policy.

ANSWER:

INTERROGATORY NO. 11: State the Main Duties of Plaintiff's occupation and your determination as to Plaintiff's ability to perform each main duty.

ANSWER:

INTERROGATORY NO. 12:  Please state the date that you reasonably anticipated litigation was likely to ensue regarding Plaintiff's claim for disability benefits.

ANSWER:

INTERROGATORY NO. 13:   Identify each person answering these Interrogatories, supplying information for, or assisting in any way, on behalf of Defendant, including:
     a)  each person's full name;
     b)  his/her job position;
     c)  the duties of his/her position; and,
     d)  the length of time he/she has been employed in his/her current position.

ANSWER:

INTERROGATORY NO. 14: Identify each employee of Defendant who had any conversation(s) with the Plaintiff concerning his disability claim and the general nature of what was said or communicated.

ANSWER:

INTERROGATORY NO. 15: Please identify any and all sicknesses or injuries, as defined by the policy, that Plaintiff received treatment for between June 1, 2016 and September 1, 2016.

ANSWER:

INTERROGATORY NO. 16: Please state the factual basis that supports your contention that Plaintiff's left brachial plexopathy was caused, contributed to by, or resulted from the sicknesses or injuries identified in your response to Plaintiff's Interrogatory No. 15 above.

ANSWER:

INTERROGATORY NO. 17: Please describe the "Own Occupation Period" that applies to Plaintiff as that term is defined in the policy.

ASNWER:

# Exhibit B

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

Plaintiff, Brian Carpenter, respectfully requests, pursuant to Rule 196 of the Texas Rules of Civil Procedure, that Defendant and its attorneys produce for inspection and copying the documents and other tangible items listed herein below at the offices of BLAIES & HIGHTOWER, L.L.P., 420 Throckmorton Street, Suite 1200, Fort Worth, Texas 76102, within thirty (30) days from the date on which this Request is served upon you.  Plaintiff will bear the reasonable expense of reproducing copies of photographs from negatives or for reproducing copies of documents described below.

### Definitions

As used in this Request for Production of Documents, and in connection with any supplementation of prior answers to this Request for Production, the term "Plaintiff" shall mean BRIAN CARPENTER.

As used in this Request for Production of Documents, and in connection with any supplementation of prior answers to these Interrogatories, the term "Defendant," "you," or "your" shall mean THE LINCOLN NATIONAL LIFE INSURANCE COMPANY.

The term "lawsuit" means any and all claims presently filed or which may be filed in the above styled cause by the Plaintiff.

The term "documents" shall mean all writing of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession, custody, or control, or known to you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any governmental agency, department, administrative, or private entity or person.  The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter.  It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.  For purposes of illustration and not limitation, the term shall include:  affidavits; agendas; agreements; analyses; announcements; bills; statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts; drawings; check registers; checkbooks;

circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals; balance sheets; profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements; interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes and other records and recordings of any conferences, meetings, visits, statements, interviews, or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested. The term also includes any deleted documents.

The term "policy" means Group Long Term Disability Policy, number 00001014878000000, issued by Defendant under which Plaintiff was insured and claim number 1160123576.

The terms "communication(s)," "communicate," "comment," or "correspondence" shall mean and include all discussions, conversations, interviews, negotiations, cablegrams, mailgrams, telegrams, telexes, cables, electronic mail, text messages, multimedia messages, or other forms of written or verbal interchange, however transmitted, including reports, notes, memoranda, lists, agenda, and other documents and records of communications, and when used shall require a statement of the name of the individual who made the communication, the person(s) to whom he made it, the date it was made, the form in which it was made, and whether or not it was recorded. This also includes any deleted communications or correspondence, including, but not limited to, deleted emails or text messages.

The term "person" or "persons" includes any legal entity inquired about, whether a natural person, partnership, association, joint venture, corporation or other legal entity.

The terms "medical professional(s)" or "healthcare professional(s)" means an individual accredited by a professional body upon completing a course of study, and usually licensed by a government agency to practice a health-related profession, such as dentistry, medicine, nursing, occupational health or physical therapy.

The terms "claim(s)" means Plaintiff's claim for disability benefits under The Lincoln National Life Insurance Company's Group Long Term Disability Policy, number 00001014878000000.

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:     Produce all written reports of any health care professional who reviewed Plaintiff's medical records as part of your investigation of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 2:     Produce all communications pertaining to Plaintiff's claim for disability benefits. If you contend that any of these communications are privileged, please provide a privilege log stating the privilege asserted, the parties to the communication, the general nature of the communication, and the date of the communication.

RESPONSE:

REQUEST FOR PRODUCTION NO. 3:     Produce a resume or curriculum vitae for each person who reviewed Plaintiff's medical records as part of your investigation of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 4:     Produce the entire claim and investigations file of Defendant, including, but not limited to, statements, reports, memoranda, communications, medical records and documents, regarding Plaintiff's claim for disability benefits generated or obtained by Defendant, Defendant's agents, or Defendant's insurers in the ordinary course of business. Note that this information is generally not work product and contains discoverable information. Please provide a privilege log for each portion of the claim and investigations file withheld that states the nature of the privilege asserted, the general subject matter of the information/documentation, the date the information/documentation was created or received, and the person(s) to whom the privilege applies.

RESPONSE:

REQUEST FOR PRODUCTION NO. 5:     Produce all documents in your possession evidencing Plaintiff's medical treatment for left brachial plexopathy, or a condition caused by, contributed to, or resulting from brachial plexopathy, from June 1, 2016 to September 1, 2016.

RESPONSE:

REQUEST FOR PRODUCTION NO. 6:     Produce all documents, reports, publications, codes, laws, ordinances, or industry standards which you now contend or will contend at trial support any defensive theory.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 7:</u>      Produce any written, taped, or mechanically reproduced statement made by Plaintiff.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 8:</u>      Produce any written, taped, or mechanically reproduced statement made by Defendant, or any of Defendant's agents or employees, concerning Plaintiff's claim for disability benefits. If you contend any such statement is privileged, please provide a privilege log which contains the nature of the privilege asserted, the general subject matter of the statement, the date of the statement, and the person(s) to whom the privilege applies.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 9:</u>      Produce all documents and records Defendant obtained from all sources to be used at trial.  This includes, but is not limited to, any documents received via Depositions on Written Questions.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 10:</u>      Produce any written, taped, or mechanically reproduced statements heretofore made by the Plaintiff or Plaintiff's agent, representative or health care provider concerning his claim for disability benefits.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 11:</u>      Produce all computer data, diary data, documents, computer generated diaries and/or logs, or memoranda pertaining to investigations and claims handling, undertaken by you or anyone on your behalf, direction or control, concerning Plaintiff's claims for disability benefits before the date you had "good cause" (as defined by Texas courts) to believe that a lawsuit would be filed.  This request includes investigations and claims handling data, diary, Colosus, Mitchell and like computer diary notes of Defendant's agents, representatives, or employees. If you rely upon "good cause," please provide all documents until that date and indicate in your response to this request the date you contend that you had "good cause."

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 12:</u>      Please produce any policy or procedure of Defendant governing communicating reasons for denial of disability benefits to claimants, including altering stated reasons for denial upon appeal of original determination.

<u>REQUEST FOR PRODUCTION NO. 13:</u>      Produce any and all documents used by Defendant, including Defendant's agents and employees, to evaluate Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 14:    Produce a copy of all documents which support Defendant's contentions set forth in any pleading on file or which may be filed.

RESPONSE:

REQUEST FOR PRODUCTION NO. 15:    Produce any studies Defendant has undertaken or obtained regarding the occupation of a podiatric surgeon.

RESPONSE:

REQUEST FOR PRODUCTION NO. 16:    Produce any studies Defendant has undertaken or obtained regarding the nature, treatment, and care of brachial plexopathy.

RESPONSE:

REQUEST FOR PRODUCTION NO. 17:    Produce any studies Defendant has undertaken or obtained regarding the nature, treatment, and care of spasmodic torticollis and cervical dystonia.

RESPONSE:

REQUEST FOR PRODUCTION NO. 18:    Produce any and all training material used to educate Defendant's employees on how to handle disability claims in effect from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 19:    Produce any and all documents or materials used to train Defendant's employees in communicating with claimants.

RESPONSE:

REQUEST FOR PRODUCTION NO. 20:    Produce any and all documents and materials regarding Defendant's guidelines for the administration, management, investigation and validation of disability claims in the last five (5) years.

RESPONSE:

REQUEST FOR PRODUCTION NO. 21:    Produce all policy statements, bulletins, documents, guidelines, letters, emails, or electronic media directed to claims personnel and management regarding The Lincoln National Life Insurance Company's practices or polices regarding handling, processing, and investigating claims from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 22:    Produce all policy statements, bulletins, documents,

guidelines, letters, emails, or electronic media directed to claims personnel and management regarding The Lincoln National Life Insurance Company's practices or polices regarding approving or denying claims for disability benefits from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 23:    Produce all policy statements, bulletins, documents, guidelines, letters, emails, or electronic media directed to claims personnel and management regarding The Lincoln National Life Insurance Company's practices or polices regarding selection and use of independent medical professionals to review disability claimants' medical records from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 24:    Produce any and all documents completed by Defendant's employees monitoring the status of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 25:    Produce any and all documents or materials pertaining to any "roundtable review" of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 26:    Produce any material in any format that relates to surveillance performed on Plaintiff from October 7, 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 27:    Produce all complaints registered with the Texas Department of Insurance against Defendant from 2013 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 28:    Produce all documents relating to the "reserve amount" set on Plaintiff's claim for long-term disability benefits. For purposes of this Request, "reserve amount" refers to the amount of money set aside for a claim that has been reported but not yet settled.

RESPONSE:

REQUEST FOR PRODUCTION NO. 29:    Produce all documents provided to each medical professional employed or retained by Defendant regarding Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 30:   Produce any and all documents or information related to periodic reporting requirements under § 542.006 of the Texas Insurance Code.

RESPONSE:

REQUEST FOR PRODUCTION NO. 31:   Produce all documents in Defendant's possession regarding its investigation and determination of whether Plaintiff qualified for Partial Disability Benefits under the policy.

RESPONSE:

REQUEST FOR PRODUCTION NO. 32:   Produce all documents in Defendant's custody or control which explain Defendant's determination not to pay Plaintiff Partial Disability Benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 33:   Please provide all documents and information in Defendant's custody or control which relate to Defendant's determination that the Plaintiff met the policy definition of "disability to LTD- 2/4/17" set forth in the attached "Exhibit 'A' to Plaintiff's Requests for Production.

RESPONSE:

REQUEST FOR PRODUCTION NO. 34:   Produce any and all documents or information in Defendant's possession custody or control that support the finding that left brachial plexopathy is caused by, contributed to, or results from headaches, spasmodic torticollis, or cervical dystonia.

RESPONSE:

REQUEST FOR PRODUCTION NO. 35:   Please provide all written correspondence from Defendant to Plaintiff, including any attached documents.

RESPONSE:

REQUEST FOR PRODUCTION NO. 36:   Please provide all written correspondence from Plaintiff to Defendant, including any attached documents.

RESPONSE:

REQUEST FOR PRODUCTION NO. 37:   Please produce all documents and information regarding monthly premium payments by Tarrant County Hospital District d/b/a JPS Health Network for Group Long Term Disability Policy, number 00001014878000000, from 2016 to 2018.

RESPONSE:

REQUEST FOR PRODUCTION NO. 38:    Please produce any calendaring, tickler system, or deadline software data or information utilized in scheduling deadlines for rendering decisions for Plaintiff's claim for disability benefits.

RESPONSE:

# EXHIBIT "A" TO PLAINTIFF'S REQUESTS FOR PRODUCTION

Clinician/Appeals Examiner:     Jamie Kudym
Phone Number:     402-361-7235

Claimant Name:     Dr. Brian Carpenter
Claim Number:     LTD- 1160123576 LWOP- 1170036314

Date of Birth:     9/4/1966
Date of Disability:     10/6/2016

1st or 2nd Appeal/STD/LTD/Life Waiver:  1st level appeal LTD
Diagnosis:     brachial plexus disorders

Name and Specialty of prior external vendor reviewers/examiners:

NMR
Dr. Steven Donald Graham, Board Certified Neurology

Attorney Involvement: Yes
Attorney Contact Information: William T Fitzgerald- 817-335-1615

Treating Provider(s) Name, Specialty and Contact Number:

Dr. Madhuri Koganti- Neuro- 817-865-6282

Claim Summary:

Brian Carpenter is a 51 year old Podiatrist who stopped working on 10/6/16 due to brachial plexus disorders. It was previously determined the claimant met the policy definition of disability to LTD- 2/4/17, LWOP- none.

At this time we are reviewing whether or not the evidence within the file indicates that the claimant received treatment during the period of time indicated below, for a condition which later became the basis of a claim for disability benefits.

Please respond to the following questions based on your review of the records.

Questions-

1 Please identify and list all of the conditions the claimant received treatment for during the time period of 6/1/16-9/1/16.

2     Did this claimant receive treatment during the time period of 6/1/16-9/1/16 for a condition that either was caused by, contributed to, or resulted from left brachial plexopathy. Please note that treatment means consultation, care or services provided by a Physician. It also includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

3     Please review the prescriptions listed in the records and determine if any of them that were prescribed from 6/1/16-9/1/16 would be used to treat any of the health conditions noted in the records.

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO LINCOLN NATIONAL CORPORATION d/b/a LINCOLN FINANCIAL GROUP**

Plaintiff, Brian Carpenter, respectfully requests, pursuant to Rule 196 of the Texas Rules of Civil Procedure, that Defendant and its attorneys produce for inspection and copying the documents and other tangible items listed herein below at the offices of BLAIES & HIGHTOWER, L.L.P., 420 Throckmorton Street, Suite 1200, Fort Worth, Texas 76102, within thirty (30) days from the date on which this Request is served upon you. Plaintiff will bear the reasonable expense of reproducing copies of photographs from negatives or for reproducing copies of documents described below.

## Definitions

As used in this Request for Production of Documents, and in connection with any supplementation of prior answers to this Request for Production, the term "Plaintiff" shall mean BRIAN CARPENTER.

As used in this Request for Production of Documents, and in connection with any supplementation of prior answers to these Interrogatories, the term "Defendant," "you," or "your" shall mean LINCOLN NATIONAL CORPORATION LINCOLN FINANCIAL GROUP.

The term "lawsuit" means any and all claims presently filed or which may be filed in the above styled cause by the Plaintiff.

The term "documents" shall mean all writing of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession, custody, or control, or known to you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any governmental agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills; statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks,

vouchers, receipts and other records of payments; charts; drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals; balance sheets; profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements; interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes and other records and recordings of any conferences, meetings, visits, statements, interviews, or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.  The term also includes any deleted documents.

The term "policy" means Group Long Term Disability Policy, number 00001014878000000, issued by Defendant under which Plaintiff was insured and claim number 1160123576.

The terms "communication(s)," "communicate," "comment," or "correspondence" shall mean and include all discussions, conversations, interviews, negotiations, cablegrams, mailgrams, telegrams, telexes, cables, electronic mail, text messages, multimedia messages, or other forms of written or verbal interchange, however transmitted, including reports, notes, memoranda, lists, agenda, and other documents and records of communications, and when used shall require a statement of the name of the individual who made the communication, the person(s) to whom he made it, the date it was made, the form in which it was made, and whether or not it was recorded. This also includes any deleted communications or correspondence, including, but not limited to, deleted emails or text messages.

The term "person" or "persons" includes any legal entity inquired about, whether a natural person, partnership, association, joint venture, corporation or other legal entity.

The terms "medical professional(s)" or "healthcare professional(s)" means an individual accredited by a professional body upon completing a course of study, and usually licensed by a government agency to practice a health-related profession, such as dentistry, medicine, nursing, occupational health or physical therapy.

The terms "claim(s)" means Plaintiff's claim for disability benefits under The Lincoln National Life Insurance Company's Group Long Term Disability Policy, number 00001014878000000.

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:     Produce all written reports of any health care professional who reviewed Plaintiff's medical records as part of your investigation of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 2:     Produce all communications pertaining to Plaintiff's claim for disability benefits. If you contend that any of these communications are privileged, please provide a privilege log stating the privilege asserted, the parties to the communication, the general nature of the communication, and the date of the communication.

RESPONSE:

REQUEST FOR PRODUCTION NO. 3:     Produce a resume or curriculum vitae for each person who reviewed Plaintiff's medical records as part of your investigation of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 4:     Produce the entire claim and investigations file of Defendant, including, but not limited to, statements, reports, memoranda, communications, medical records and documents, regarding Plaintiff's claim for disability benefits generated or obtained by Defendant, Defendant's agents, or Defendant's insurers in the ordinary course of business. Note that this information is generally not work product and contains discoverable information. Please provide a privilege log for each portion of the claim and investigations file withheld that states the nature of the privilege asserted, the general subject matter of the information/documentation, the date the information/documentation was created or received, and the person(s) to whom the privilege applies.

RESPONSE:

REQUEST FOR PRODUCTION NO. 5:     Produce all documents in your possession evidencing Plaintiff's medical treatment for left brachial plexopathy, or a condition caused by, contributed to, or resulting from brachial plexopathy, from June 1, 2016 to September 1, 2016.

RESPONSE:

REQUEST FOR PRODUCTION NO. 6:     Produce all documents, reports, publications, codes, laws, ordinances, or industry standards which you now contend or will contend at trial support any defensive theory.

RESPONSE:

REQUEST FOR PRODUCTION NO. 7:    Produce any written, taped, or mechanically reproduced statement made by Plaintiff.

RESPONSE:

REQUEST FOR PRODUCTION NO. 8:    Produce any written, taped, or mechanically reproduced statement made by Defendant, or any of Defendant's agents or employees, concerning Plaintiff's claim for disability benefits. If you contend any such statement is privileged, please provide a privilege log which contains the nature of the privilege asserted, the general subject matter of the statement, the date of the statement, and the person(s) to whom the privilege applies.

RESPONSE:

REQUEST FOR PRODUCTION NO. 9:    Produce all documents and records Defendant obtained from all sources to be used at trial.  This includes, but is not limited to, any documents received via Depositions on Written Questions.

RESPONSE:

REQUEST FOR PRODUCTION NO. 10:    Produce any written, taped, or mechanically reproduced statements heretofore made by the Plaintiff or Plaintiff's agent, representative or health care provider concerning his claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 11:    Produce all computer data, diary data, documents, computer generated diaries and/or logs, or memoranda pertaining to investigations and claims handling, undertaken by you or anyone on your behalf, direction or control, concerning Plaintiff's claims for disability benefits before the date you had "good cause" (as defined by Texas courts) to believe that a lawsuit would be filed.  This request includes investigations and claims handling data, diary, Colosus, Mitchell and like computer diary notes of Defendant's agents, representatives, or employees. If you rely upon "good cause," please provide all documents until that date and indicate in your response to this request the date you contend that you had "good cause."

RESPONSE:

REQUEST FOR PRODUCTION NO. 12:    Please produce any policy or procedure of Defendant governing communicating reasons for denial of disability benefits to claimants, including altering stated reasons for denial upon appeal of original determination.

REQUEST FOR PRODUCTION NO. 13:    Produce any and all documents used by Defendant, including Defendant's agents and employees, to evaluate Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 14:   Produce a copy of all documents which support Defendant's contentions set forth in any pleading on file or which may be filed.

RESPONSE:

REQUEST FOR PRODUCTION NO. 15:   Produce any studies Defendant has undertaken or obtained regarding the occupation of a podiatric surgeon.

RESPONSE:

REQUEST FOR PRODUCTION NO. 16:   Produce any studies Defendant has undertaken or obtained regarding the nature, treatment, and care of brachial plexopathy.

RESPONSE:

REQUEST FOR PRODUCTION NO. 17:   Produce any studies Defendant has undertaken or obtained regarding the nature, treatment, and care of spasmodic torticollis and cervical dystonia.

RESPONSE:

REQUEST FOR PRODUCTION NO. 18:   Produce any and all training material used to educate Defendant's employees on how to handle disability claims in effect from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 19:   Produce any and all documents or materials used to train Defendant's employees in communicating with claimants.

RESPONSE:

REQUEST FOR PRODUCTION NO. 20:   Produce any and all documents and materials regarding Defendant's guidelines for the administration, management, investigation and validation of disability claims in the last five (5) years.

RESPONSE:

REQUEST FOR PRODUCTION NO. 21:   Produce all policy statements, bulletins, documents, guidelines, letters, emails, or electronic media directed to claims personnel and management regarding The Lincoln National Life Insurance Company's practices or polices regarding handling, processing, and investigating claims from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 22:   Produce all policy statements, bulletins, documents, guidelines, letters, emails, or electronic media directed to claims personnel and management regarding The Lincoln National Life Insurance Company's practices or polices regarding approving or denying claims for disability benefits from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 23:   Produce all policy statements, bulletins, documents, guidelines, letters, emails, or electronic media directed to claims personnel and management regarding The Lincoln National Life Insurance Company's practices or polices regarding selection and use of independent medical professionals to review disability claimants' medical records from 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 24:   Produce any and all documents completed by Defendant's employees monitoring the status of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 25:   Produce any and all documents or materials pertaining to any "roundtable review" of Plaintiff's claim for disability benefits.

RESPONSE:

REQUEST FOR PRODUCTION NO. 26:   Produce any material in any format that relates to surveillance performed on Plaintiff from October 7, 2016 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 27:   Produce all complaints registered with the Texas Department of Insurance against Defendant from 2013 to present.

RESPONSE:

REQUEST FOR PRODUCTION NO. 28:   Produce all documents relating to the "reserve amount" set on Plaintiff's claim for long-term disability benefits. For purposes of this Request, "reserve amount" refers to the amount of money set aside for a claim that has been reported but not yet settled.

RESPONSE:

REQUEST FOR PRODUCTION NO. 29:   Produce all documents provided to each medical professional employed or retained by Defendant regarding Plaintiff's claim for disability benefits.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 30:</u>   Produce any and all documents or information related to periodic reporting requirements under § 542.006 of the Texas Insurance Code.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 31:</u>   Produce all documents in Defendant's possession regarding its investigation and determination of whether Plaintiff qualified for Partial Disability Benefits under the policy.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 32:</u>   Produce all documents in Defendant's custody or control which explain Defendant's determination not to pay Plaintiff Partial Disability Benefits.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 33:</u>   Please provide all documents and information in Defendant's custody or control which relate to Defendant's determination that the Plaintiff met the policy definition of "disability to LTD- 2/4/17" set forth in the attached "Exhibit 'A' to Plaintiff's Requests for Production.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 34:</u>   Produce any and all documents or information in Defendant's possession custody or control that support the finding that left brachial plexopathy is caused by, contributed to, or results from headaches, spasmodic torticollis, or cervical dystonia.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 35:</u>   Please provide all written correspondence from Defendant to Plaintiff, including any attached documents.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 36:</u>   Please provide all written correspondence from Plaintiff to Defendant, including any attached documents.

RESPONSE:

<u>REQUEST FOR PRODUCTION NO. 37:</u>   Please produce all documents and information regarding monthly premium payments by Tarrant County Hospital District d/b/a JPS Health Network for Group Long Term Disability Policy, number 00001014878000000, from 2016 to 2018.

RESPONSE:

REQUEST FOR PRODUCTION NO. 38:    Please produce any calendaring, tickler system, or deadline software data or information utilized in scheduling deadlines for rendering decisions for Plaintiff's claim for disability benefits.

RESPONSE:

# EXHIBIT "A" TO PLAINTIFF'S REQUESTS FOR PRODUCTION

Clinician/Appeals Examiner:    Jamie Kudym
Phone Number:    402-361-7235

Claimant Name:    Dr. Brian Carpenter
Claim Number:    LTD- 1160123576 LWOP- 1170036314

Date of Birth:    9/4/1966
Date of Disability:    10/6/2016

1st or 2nd Appeal/STD/LTD/Life Waiver:  1st level appeal LTD
Diagnosis:    brachial plexus disorders

Name and Specialty of prior external vendor reviewers/examiners:

NMR
Dr. Steven Donald Graham, Board Certified Neurology

Attorney Involvement: Yes
Attorney Contact Information: William T Fitzgerald- 817-335-1615

Treating Provider(s) Name, Specialty and Contact Number:

Dr. Madhuri Koganti- Neuro- 817-865-6282

Claim Summary:

Brian Carpenter is a 51 year old Podiatrist who stopped working on 10/6/16 due to brachial plexus disorders. It was previously determined the claimant met the policy definition of disability to LTD- 2/4/17, LWOP- none.

At this time we are reviewing whether or not the evidence within the file indicates that the claimant received treatment during the period of time indicated below, for a condition which later became the basis of a claim for disability benefits.

Please respond to the following questions based on your review of the records.

Questions-

1 Please identify and list all of the conditions the claimant received treatment for during the time period of 6/1/16-9/1/16.

2      Did this claimant receive treatment during the time period of 6/1/16-9/1/16 for a condition that either was caused by, contributed to, or resulted from left brachial plexopathy. Please note that treatment means consultation, care or services provided by a Physician. It also includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

3      Please review the prescriptions listed in the records and determine if any of them that were prescribed from 6/1/16-9/1/16 would be used to treat any of the health conditions noted in the records.